# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEROME RATLIFF JR., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CEVA LOGISTICS, U.S. INC., a Delaware Corporation, and CEVA FREIGHT, LLC a Delaware Limited Liability Company,<br><br>Defendants. | CIVIL ACTION<br><br>No. 1:17-cv-2733<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jerome Ratliff Jr. brings this Class Action Complaint and Demand for Jury Trial against Defendants CEVA Logistics, U.S. Inc. and CEVA Freight, LLC ("Defendants" or, collectively, "CEVA") for their intentional and willful violations of Plaintiff's and a proposed Class of consumers' statutorily protected credit and employment-related rights. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. CEVA is a self-proclaimed leader in the trucking and transportation industry.

2. Seeking to expand its fleet, CEVA encourages consumers to apply for driving positions by visiting its website and completing an online application. As part of its hiring process, CEVA pulls applicants' background reports from HireRight, LLC—a leading pre-employment screening provider—to identify, among other things, their names, social security numbers, dates of birth, previous employers, work records, and trucking accident or incident

histories. Using the information contained in these reports, CEVA then decides whether to continue the hiring process or not.

3. Given the impact that these reports have on an individual's access to employment, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA"), specifically to protect consumers from the ill effects of erroneous credit reporting and provide them with a means of ensuring that the information being distributed about them is accurate and updated.

4. To that end, when companies like CEVA decide not to hire an individual based in whole, or in part, on the contents of these reports, they are required under the FCRA to provide the individual within three business days of taking such action notice:

- That adverse action has been taken based in whole or in part on a consumer report received from a consumer reporting agency (like HireRight);

- Of the name, address and telephone number of the consumer reporting agency that furnished the consumer report;

- That the consumer reporting agency did not make the decision to take the adverse action and is unable to provide to the applicant the specific reasons why the adverse action was taken; and

- That the applicant may, upon providing proper identification, request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report.

5. Unfortunately, CEVA disregards these statutorily imposed obligations and intentionally withholds the above-described information from applicants it decides not to hire based in whole or in part on their credit reports.

6. Accordingly, this Complaint seeks an Order: (i) declaring that CEVA's conduct violates the FCRA; (ii) requiring CEVA to cease the unlawful activities discussed herein; and (iii) awarding actual or statutory damages to Plaintiff and the proposed Class.

## PARTIES

7. Plaintiff Jerome Ratliff Jr. is a natural person and citizen of the State of Illinois.

8. Defendant CEVA Logistics, U.S. Inc. is a Delaware corporation with its headquarters located at 15350 Vickery Drive, Houston, Texas, 77032. CEVA Logistics, U.S. Inc. conducts business throughout this County, the State of Illinois, and the United States.

9. Defendant CEVA Freight, LLC is a Delaware Limited Liability Company with its headquarters located at 15350 Vickery Drive, Houston, Texas, 77032. CEVA Freight, LLC conducts business throughout this County, the State of Illinois, and the United States. CEVA's parent company, CEVA Holdings LLC employs approximately 40,000 people worldwide and generates annual revenue in excess of $6.6 billion, of which over $2.3 billion is generated by activities in the United States.[1]

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

11. This Court has personal jurisdiction over Defendants because Defendants conduct business transactions in this District, including soliciting business and employees, and entering into business and employment agreements. Additionally, Defendants have committed tortious acts in this District.

12. Venue is proper in this District because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

---

[1] *See* http://www.cevalogistics.com/about-us/facts-figures and
http://cdn.cevalogistics.com/sites/default/files/CEVA%20Holdings%20LLC%20-%20Annual%20Report%202016_FINAL%2009032017%2001%2040.pdf.

3

# COMMON FACTUAL ALLEGATIONS

**I.     The Fair Credit Reporting Act.**

13.     Congress enacted the FCRA in 1970 in recognition of the serious impact credit reports (referred to as "consumer reports" under the FCRA) could have on consumers' lives, including by affecting their access to employment. *See* Pub. L. No. 91-508, 84 Stat. 1128 (1970).

14.     To that end, if a consumer applies to certain types of employment opportunities by mail, telephone, computer, or other similar means, before a consumer report is procured or caused to be procured in connection with that application:

>   (i)    the person who procures the consumer report on the consumer for employment purposes shall provide to the consumer, by oral, written, or electronic means, notice that a consumer report may be obtained for employment purposes, and a summary of the consumer's rights under 15 U.S.C. § 1681m(a)(3); and
>
>   (ii)   the consumer shall have consented, orally, in writing, or electronically to the procurement of the report by that person.

*See* 15 U.S.C. § 1681b(b)(2)(B).

15.     The FCRA also regulates companies that decide to take adverse action (*e.g.*, denying employment) against an individual on the basis of information contained in their consumer reports. *See* 15 U.S.C. § 1681b(b)(3). For instance, if a consumer applies to a company for a trucking or transportation-related job (like those offered by CEVA) by mail, telephone, computer, or other similar means, and that company decides to deny employment to the individual based in whole or in part on a consumer report, then the company must provide to the individual within three business days of its decision an oral, written or electronic notification:

>   (i)    that adverse action has been taken based in whole or in part on a consumer report received from a consumer reporting agency;
>
>   (ii)   of the name, address and telephone number of the consumer reporting agency that furnished the consumer report;

(iii) that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide to the consumer the specific reasons why the adverse action was taken; and

(iv) that the consumer may, upon providing proper identification, request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report.

*See* 15 U.S.C. § 1681b(b)(3)(B).

16. Under the FCRA, a "consumer report" means "any . . . communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" which is used for, among other things, employment purposes. 15 U.S.C. § 1681a(d)(1).

17. A "consumer reporting agency" means "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

**II. CEVA Violates the Fair Credit Reporting Act as a Matter of Course.**

18. Consumers can apply for driving positions with CEVA by, among other ways, visiting its website and completing an online application.

19. As part of its hiring process, CEVA routinely obtains and uses consumer reports to screen applicants, including reports prepared by the leading pre-employment screening agency HireRight. HireRight's reports, including its flagship "DAC Employment History" reports, provide CEVA with the applicant's name, social security number, date of birth, previous employers, work records, reasons for leaving past employers, rehire eligibility, drug and alcohol

5

history, truck driving school performance records, and trucking accident or incident history.

20. Unfortunately, when CEVA decides not to hire an applicant based in whole, or in part, on a consumer report it does not provide the applicant with the information mandated by the FCRA. For instance, CEVA does not provide rejected applicants with the name, address, and telephone number of the consumer reporting agency that furnished the report (*e.g.*, HireRight) nor does it notify them that the consumer reporting agency did not make the decision to not hire them as required by 15 U.S.C. § 1681b(b)(3)(B).

21. The FCRA's comprehensive series of regulations, including the requirements described above, were specifically enacted to provide individuals with a means of ensuring that the information being distributed about them is accurate and updated, which, in turn, ensures them fair access to employment. An individual who is deprived of this information after being denied employment is therefore harmed because, among other reasons, they are denied access to a job based on a record of information they do not possess, cannot verify, and from a third party they have no direct relationship with. They are also deprived of the opportunity of timely responding to or correcting inaccurate or incomplete information.

## FACTS SPECIFIC TO PLAINTIFF RATLIFF

22. On or around December 8, 2014, Plaintiff Ratliff submitted an online application for a commercial truck driver position with CEVA. Ratliff's online application was, like all online applications for driving positions with CEVA, automatically sent to and considered by both CEVA Logistics and CEVA Freight.

23. On or around January 9, 2015, and again on January 14, 2015, CEVA obtained Ratliff's background report from HireRight, which Ratliff learned in or about October 2015 through his own investigation.

6

24. On information and belief, after receiving and reviewing Ratliff's background report, CEVA took adverse action against him by disqualifying him from further consideration for employment based, in part, upon the information contained in HireRight's background report.

25. CEVA decided not to hire and did not hire Ratliff.

26. In spite of its obligations under the FCRA, CEVA did not provide Ratliff with the notice required by the FCRA within three business days of deciding not to hire him, including, for example (i) that CEVA decided not to hire Ratliff based in whole or in part on a consumer report received from HireRight; (ii) the name, address and telephone number of HireRight; (iii) that HireRight did not make the decision to take the adverse action and is unable to provide to Ratliff the specific reasons why the adverse action was taken; and (iv) that Ratliff could have disputed with HireRight the accuracy or completeness of any information in the report.

27. Because CEVA did not comply with the FCRA requirements described above, any attempt by Ratliff to verify the accuracy of the report and determine who prepared it was frustrated. As such, Ratliff could not timely respond to or correct any inaccurate or incomplete background information and, as a result, was denied fair access to employment.

28. CEVA's violations of the FCRA was willful inasmuch as it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of the FCRA (for instance, CEVA knew of and complied with the various other employment regulations throughout the employment application process).

## CLASS ALLEGATIONS

29. **Class Definition**: Plaintiff Ratliff brings this action pursuant to Rule 23 on behalf of himself and a class of similarly situated individuals, defined as follows:

> All individuals in the United States who, from the date five years prior to the date of the filing of this action to the present, submitted an online job application to

CEVA and were denied employment based in whole or in part on information contained in a consumer report without being provided within three business days of such adverse action an oral, written or electronic notification: (i) that adverse action has been taken based in whole or in part on a consumer report received from a consumer reporting agency; (ii) of the name, address and telephone number of the consumer reporting agency that furnished the consumer report; (iii) that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide to them the specific reasons why the adverse action was taken; and (iv) that they may, upon providing proper identification, request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

30. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, there are thousands of people in the Class, making joinder of each individual member impracticable. Ultimately, members of the Class will be easily identified through Defendants' records.

31. **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members:

    (a) whether Defendants took adverse action on each Plaintiff's and Class members' employment applications based in whole or in part on a consumer report received from a consumer reporting agency;

(b) whether Defendants provided Plaintiff and Class members with the FCRA's adverse action notifications, as required by 15 U.S.C. § 1681b(b)(3)(B);

(c) whether Plaintiff and the Class were injured as a result of Defendants' conduct described herein;

(d) whether Defendants' conduct described herein constitutes a violation of the FCRA; and

(e) whether Defendants' conduct described herein was willful.

32. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

33. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and

comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of the Fair Credit Reporting Act**
**15 U.S.C. § 1681b(b)(3)(B)**
**(On behalf of Plaintiff and the Class)**

34. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

35. The FCRA was enacted in 1970 specifically to protect consumers from, among other things, the ill effects of erroneous credit reporting and provide them with a means of ensuring that the information being distributed about them is accurate and updated.

36. The FCRA's comprehensive series of regulations, including the requirements described in Section I above, provide individuals with a means of ensuring that the information being distributed about them is accurate and updated, which, in turn, ensures them fair access to employment, and also creates a private right of action by which to vindicate those rights.

37. Defendants obtained Plaintiff's and Class members' "consumer reports," as defined by the FCRA, because the background reports obtained from HireRight were communications containing "information by a consumer reporting agency [(*i.e.*, HireRight)] bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" which is used for, among other things, employment purposes. 15 U.S.C. § 1681a(d)(1).

38. HireRight is a "consumer reporting agency," as defined by the FCRA, because it is a leading pre-employment screening provider that, "for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of

furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

39. Through a uniform and standardized hiring process, Defendants obtained Plaintiff's and Class members' consumer reports and used the information contained in those reports, in whole or in part, when deciding whether to hire them.

40. Throughout that process, Defendants acknowledged certain of their obligations under the FCRA, for instance, by obtaining consent from applicants before requesting their consumer reports. Despite knowledge of their obligations to consumers under the FCRA, Defendants knowingly and willfully withheld certain information from applicants when they decided not to hire them, based in whole or in part on the contents of their consumer reports.

41. Specifically, when Plaintiff and Class members applied to a trucking or transportation-related job with Defendants by mail, telephone, computer, or other similar means, and Defendants decided to deny them employment based in whole or in part on their consumer reports, Defendants did not provide to Plaintiff or Class members within three business days of taking such action, an oral, written or electronic notification: (i) that adverse action has been taken based in whole or in part on a consumer report received from a consumer reporting agency; (ii) of the name, address and telephone number of the consumer reporting agency that furnished the consumer report; (iii) that the consumer reporting agency did not make the decision to take the adverse action and did not provide to Plaintiff or Class members the specific reasons why the adverse action was taken; and (iv) that Plaintiff or Class members could, upon providing proper identification, request a free copy of a report and dispute with the consumer reporting agency the accuracy or completeness of any information in a report, as required by the FCRA. *See* 15 U.S.C. § 1681b(b)(3)(B).

42. Defendants have continually failed to follow reasonable procedures to ensure that the information being distributed about Plaintiff and the Class members is accurate and updated, and has ultimately denied them fair access to employment.

43. As a result of Defendants' conduct described herein and their knowing and willful violations of 15 U.S.C. § 1681b(b)(3)(B), Plaintiff and the Class have suffered harm as described herein, including by unfairly being denied access to employment.

44. Plaintiff, on behalf of himself and the Class, seeks an order: declaring Defendants' conduct to be illegal class-wide; enjoining Defendants' conduct described herein; awarding him and the Class the maximum statutory damages available under 15 U.S.C. § 1681n(a)(1); and directing that Defendants pay Plaintiff's attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jerome Ratliff Jr., on behalf of himself and the Class, respectfully requests that this Court issue an order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Ratliff as representative of the Class, and appointing his counsel as class counsel;

B. Declaring that Defendants' actions, as described herein, constitute violations of the FCRA;

C. Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class members;

D. Awarding actual damages or statutory damages as provided by the FCRA;

E. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees; and

F. Awarding such other and further relief as equity and justice may require.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**JEROME RATLIFF JR.**, individually and on behalf of all others similarly situated,

Dated: April 11, 2017

By: s/ Michael Aschenbrener
One of Plaintiff's Attorneys

Michael Aschenbrener (6292306)
masch@kamberlaw.com
Adam C. York (6294143)
ayork@kamberlaw.com
KamberLaw LLC
220 N Green St
Chicago, IL 60607
Tel: 212.920.3072
Fax: 212.202.6364